Kenneth K. Lee
Tel  +1 213 239 5152
klee@jenner.com

January 12, 2016

**VIA ECF AND HAND DELIVERY**

Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 10A S
Brooklyn, NY 11201

Re:   *Forsher v. The J.M. Smucker Co.*, Case No. 15-cv-07180-RJD-MDG

Dear Judge Dearie:

On behalf of defendant The J.M. Smucker Co., we write to oppose Plaintiff Graham Forsher's January 11 request for an early settlement conference, and to ask for a pre-motion conference seeking permission to file a motion to dismiss. Smucker produces several varieties of Jif Natural Peanut Butter Spreads, which are made with a few simple ingredients: peanuts, sugar, palm oil, salt, honey, and/or molasses. It is undisputed that Jif peanut butter contains no artificial coloring, sweeteners, or preservatives. Nonetheless, Plaintiff alleges that the "natural" label on these Jif products is false because the sugar ingredient might possibly be derived from genetically engineered sugar beets (also called Genetically Modified Organisms or "GMOs"). As set forth below, Plaintiff's complaint should be dismissed for several independent reasons.

**I.    The Complaint Should Be Dismissed or Stayed Under The Primary Jurisdiction Because the FDA Is Actively Reviewing The Use Of The Term "Natural."**

Plaintiff's lawsuit should be dismissed or stayed because the very issue being challenged in this case — whether GMO-derived foods can be labeled as "natural" — is currently being reviewed and decided by the FDA. The primary jurisdiction doctrine allows a court to defer to an agency that has expertise over a particular issue. Further, the primary jurisdiction doctrine promotes the establishment of uniform rules and avoids conflicting decisions, which is particularly important in food labeling. Otherwise, food companies would have to comply with potentially up to 50 different state laws, the costs of which would be at least partially borne by consumers. Accordingly, the Ninth Circuit, for example, recently held that whether a product can be labeled as "natural" is a "particularly complicated issue that Congress has committed to the FDA." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015).

Courts have held that a dismissal or a stay pursuant to the primary jurisdiction doctrine is particularly appropriate where an agency is actively engaged in regulatory review.[1]  For

---

[1]  *See, e.g., Gordon v. Church & Dwight Co.*, No. 09-5585, 2010 WL 1341184, at *2 (N.D. Cal. Apr. 2, 2010) (dismissing lawsuit where "the FDA has stated that it is still considering public comments and other data in connection with warnings similar to those that plaintiffs seek to have the court impose"); *Jones v. ConAgra Foods, Inc.*, --- F. Supp. 2d ----, 2012 WL 6569393 (N.D. Cal. 2012), at *6 n.4 (explaining that a court properly invokes the primary jurisdiction doctrine where the FDA is still evaluating its position on an issue, such as where a proposed

example, over a dozen district court decisions have recently stayed class action cases claiming that the term "evaporated cane juice" is misleading, citing the FDA's announcement that it was soliciting public comments on the meaning of that term.[2] Similarly here, the FDA in November 2015 issued a formal notice seeking comments on whether and how the FDA should define the term "natural." As a "result of litigation between private parties" and the inherent "complexity of this issue," FDA declared that it would devote its resources to address "whether food products containing ingredients produced using genetic engineering . . . may be labeled as 'natural'"[3] In light of this ongoing regulatory review, this Court should dismiss or stay this lawsuit, and allow the FDA to assess whether the term "natural" can be used to describe foods made from GMO-derived ingredients.

II. **The Complaint Must Be Dismissed Because It Does Not Allege With Plausibility or Particularity That The Jif Product Plaintiff Purchased Contains Any GMOs.**

Under the *Iqbal/Twombly* pleading standard, Plaintiff must provide "more than a sheer possibility" that Jif Natural products contain bioengineered ingredients. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). He must provide some "factual content" to support his claims. *Iqbal*, 556 U.S. at 683.

Here, Plaintiff has not provided any factual allegation that the Jif Natural peanut butter he purchased actually contained any GMO material remaining from the original plant seeds. Instead, he merely speculates that that the sugar in Jif products could possibly be derived from genetically modified sugar beets. But he admits that sugar *beets* account for only about half of sugar production in the United States, and that sugar made from sugar *canes* generally are not made from GMO ingredients. Compl. ¶ 24. Plaintiff simply has not alleged with particularity that the Jif products he personally bought were made with sugar beets, let alone GMO-derived sugar beets. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1030, 33 (8th Cir. 2014) (hot dog consumers lacked Article III standing because they "failed to provide any basis to think that the *particular packages they purchased* were tainted" with non-kosher beef. (emphasis added)).

Moreover, Plaintiff has not plausibly alleged that a reasonable consumer would be misled by the use of the term "natural" in Jif peanut butter. Several courts have dismissed "all natural" food labeling lawsuits on the ground that a reasonable consumer understands that packaged

---

rule is pending); *Taradejna v. General Mills, Inc.*, 909 F. Supp 2d, 1134-35 (D. Minn. 2012) (dismissing mislabeling case on the basis of primary jurisdiction because "it would be imprudent for the Court, at this juncture, to substitute its judgment for that of the Agency's").

[2] *See, e.g., Saubers v. Kashi Co.*, 2014 WL 3908595, at *3 (S.D. Cal. 2014) ("Allowing the FDA to resolve this matter in the first instance would permit the Court to benefit from the agency's technical expertise and would also provide for uniformity in administration of the agency's food labeling requirements"); *Figy v. Amy's Kitchen, Inc.*, No. 13-3816, 2014 WL 1379915, at *3 (N.D. Cal. Apr. 9, 2014) (staying case in deference to the "FDA, the entity charged with creating and maintaining a uniform scheme of non-misleading food labels"); *Reese v. Odwalla, Inc.*, --- F. Supp. 2d ----, 2014 WL 1244940, at *5 (N.D. Cal. 2014) ("the FDA's position on the lawfulness of the . . . term is . . .under active consideration by the FDA").

[3] "Natural" on Food Labeling, U.S. FOOD AND DRUG ADMINISTRATION (Dec. 24, 2015) (extending public comment period until May 10, 2016) (available at http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/LabelingNutrition/ucm456090.htm).

foods sold on the shelves of supermarket aisles undergo some processing and require some human intervention to make them.[4]

### III. The Complaint Must Be Dismissed Under The Safe Harbor Doctrine.

The safe harbor doctrine shields a party where it has complied with federal or state laws. Here, Plaintiff's objection to the use of the word "natural" for foods containing GMOs conflicts with the FDA's longstanding policy regarding bioengineered foods. Since 1992, the FDA has consistently rejected any requirement that bioengineered ingredients be disclosed on food labels because it "is not aware of any information showing that [bioengineered foods] differ from other foods in any meaningful or uniform way, or that, as a class, foods developed by the new techniques present any different or greater safety concern than foods developed by traditional plant breeding."[5] In fact, the FDA has expressly stated that terms describing an ingredient as bioengineered "*should not* be used in the ingredient list" of a food product.[6] In its most recent guidance issued in November 2015, the FDA reaffirmed its position, and warned that it would be potentially deceptive to suggest that a non-GMO food is "safer, more nutritious, or otherwise has different attributes than other comparable foods."[7] Because the labels on Jif Natural products fully comply with the FDA's guidance regarding labeling of bioengineered foods, Plaintiff is precluded from challenging these labels under California's consumer protection statutes.[8]

For all the foregoing reasons, Defendant respectfully requests a pre-motion conference in order to seek permission to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

---

[4] *See Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 761 (W.D. Mo. 2015) (dismissing an "all natural" lawsuit challenging potato chips because a reasonable consumer understands that they are processed and plaintiff did not provide a plausible or objective definition of "natural" in this context); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (dismissing an "all natural" lawsuit challenging boxed pastas); *See Balser v. Hain Celestial Grp., Inc.*, No. 13-05604, 2013 WL 6673617, at *1 (C.D. Cal. Dec. 18, 2013) ("[I]t is undisputed that "natural" is a vague and ambiguous term[.]").

[5] Statement of Policy: Foods Derived From New Plant Varieties, 57 Fed. Reg. 22984, 22991 (May 29, 1992); *see also* Draft Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been Developed Using Bioengineering, 2001 WL 34768203 (Jan. 17, 2001) (reaffirming decision not to require special labeling of bioengineered foods because "[t]he agency is still not aware of any data or other information that would form a basis for concluding that the fact that a food or its ingredients was produced using bioengineering is a material fact[.]").

[6] Draft Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been Developed Using Bioengineering, 2001 WL 34768203 (Jan. 17, 2001) (emphasis added).

[7] Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been Derived from Genetically Engineered Plants, U.S. FOOD AND DRUG ADMINISTRATION (Nov. 2015) (available at http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/ucm059098.htm).

[8] *See, e.g., Pom Wonderful LLC v. Coca Cola Co.*, No. 08-06237, 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013) (holding that safe harbor doctrine precluded plaintiff's state law claims challenging labeling of pomegranate juice products); *Ebner v. Fresh Inc.*, No. 13-477, 2013 WL 9760035, at *6 (C.D. Cal. Sept. 11, 2013) (dismissing UCL, CLRA, and FAL claims where label on lip treatment product complied with FDA requirements was therefore "entitled to safe harbor."); *Parent v. MillerCoors LLC*, No. 15-1204, 2015 WL 6455752, at *7 (S.D. Cal. Oct. 26, 2015) (safe harbor doctrine barred plaintiff's UCL, CLRA, and FAL claims challenging label on beer products).

                                                      Respectfully submitted,

                                                      /s/ Kenneth K. Lee_____
                                                      Kenneth K. Lee