# REESE LLP

VIA ECF                                                                                   January 19, 2016

Honorable Raymond J. Dearie
United States District Judge
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

      Re:     *Forsher v. The J.M. Smucker Co.*
                Case No. 1:15-cv-07180-RJD-MDG (E.D.N.Y.)

Dear Judge Dearie:

      My firm, along with co-counsel, represents plaintiff Graham Forsher ("Plaintiff") in the above-referenced action. We make this submission in response to the request by defendant The J.M. Smucker Co. ("Defendant") for a pre-motion conference to seek permission to file a motion to dismiss. As seen below, Defendant's proposed motion to dismiss is without merit, and, consequently, its request to file such a motion should be rejected. Nonetheless, we agree that the Court should hold an in-person pre-motion conference. We also request that at that pre-motion conference this case should be evaluated to determine whether it should be scheduled for a settlement conference prior to any motion practice.

      **1.**      **Given the History of this Matter, a Settlement Conference Should Occur Before any Motion to Dismiss is Considered**

      While the Complaint in the action was filed with the Court on December 17, 2015 (Compl., ECF No. 1), the history of the matter is much longer.

      Specifically, on April 13, 2015, Defendant was served with a pre-suit demand letter and a draft copy of the Complaint, as is required by certain claims that Plaintiff raises. (*See id.* at ¶¶43–51 (claim for violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA")); *id.* at ¶50 ("On April 13, 2015, a CLRA demand letter was sent to Defendant that provided notice of Defendant's violation of the CLRA and demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein.").)

      Since April 13, 2015, the parties have engaged in extensive discussions over many months regarding early resolution of this matter. It is Plaintiff's position that the end result of these discussions is ***that the parties agreed to the terms of a settlement on November 9, 2015***.

      Plaintiff has not moved to enforce the settlement at this time, however, due to the fact that such motion practice could devolve into acrimonious accusations of reneging and bad faith. Rather, Plaintiff believes that the assistance of the Court at a settlement conference would usher the matter across the finish line without discord.

## 2. Defendant's Proposal to File a Motion to Dismiss Should be Denied

### A. Defendant's Primary Jurisdiction Doctrine Arguments are Misplaced

On November 10, 2015, the Food and Drug Administration ("FDA") stated it would take public comment on whether the FDA should become involved in governing the term "natural" when used on food products. Defendant believes this request for comment somehow will aid its defense in this litigation. The facts, however, belie Defendant's assertion.

The FDA has asked for public comment due, in part, to a petition by Consumer Reports for a ban on use of the term "natural" by food companies because of the consumer deception and confusion the use of the term creates.[1] On November 10, 2015, the FDA asked for public comment on questions including the following:

- Whether it is appropriate to define the term "natural";
- Should we prohibit the term "natural" in food labeling? Why or why not?
- Should we define, through rulemaking, the term "natural"? Why or why not?

*"Natural" on Food Labeling*, U.S. FOOD AND DRUG ADMIN., http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm456090.htm. The window for public comment closes on May 10, 2016, after having been extended by three months from February 10, 2016. These questions make it clear that it is far from certain that the FDA will either act to regulate the term "natural" or act in a way that benefits Defendant, if it does act. Indeed, the FDA asked for comment in the early 1990's and ultimately decided not to become involved.[2]

It also should be noted that the Complaint in this matter is for past damages. The Class Period ends on November 9, 2015, ***prior to the date the FDA starting seeking comment***. (Compl. ¶ 10 n.2.) Accordingly, what the FDA does in the future, if it does anything, regarding the term "natural" is immaterial and irrelevant.

For all these reasons, Defendant's motion to dismiss based on the primary jurisdiction doctrine, which rests on Defendant's speculation that the FDA may define the term "natural" so that it would benefit Defendant, should be denied.[3]

---

[1] *See End the Confusion over the Term "Natural" on Food Labels: Consumer Reports calls for a Ban on this Misleading Word*, CONSUMER REPORTS, http://www.consumerreports.org/cro/news/2014/07/end-the-confusion-over-the-term-natural-on-food-labels/index.htm (July 4, 2014) ("Due to overwhelming and ongoing consumer confusion around the natural food label, we are launching a new campaign to kill the natural label because our poll underscores that it is misleading, confusing, and deceptive").

[2] *See Use of the Term "Natural in the Labeling of Human Food Products; Request for Information and Comments*, REGULATIONS.GOV, http://www.regulations.gov/#!documentDetail;D=FDA-2014-N-1207-0001 (Nov. 12, 2015) ("[W]e said, back in 1991, that we were considering establishing a definition for this term. We said that we believed that defining the term 'natural' could remove some ambiguity surrounding use of the term that results in misleading claims. We invited comments on several questions, including whether we should establish a meaningful definition for 'natural' so that this term would have a common consumer understanding, and whether it should prohibit 'natural' claims entirely on the grounds that they are false or misleading. In the preamble to the subsequent final rule, we noted that we had received many comments on the subject, but that '[n]one of the comments provided FDA with a specific direction to follow for developing a definition regarding the use of the term "natural."' ***We stated that at that time we would not be engaging in rulemaking to define 'natural[.]'*** " (internal citations omitted)).

[3] *See, e.g.*, *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *8

Finally, it should be noted that even if Defendant were successful on its primary jurisdiction argument, it would merely result in a stay of the case, and not dismissal, resulting in the case lingering on the Court's docket for months, if not years.

### B. Defendant's Remaining Arguments are Meritless

Defendant also argues for dismissal based upon a supposed lack of plausibility and based upon the safe harbor doctrine. Courts have repeatedly rejected these arguments in similar consumer protection actions alleging food products were deceptively labeled "natural," and the Court should reject them here as well.[4] By pleading that most United States sugar is from sugar beets and that 95% of sugar beets are genetically modified (Compl. ¶ 24, ECF No. 1), Plaintiff has provided sufficient factual content to satisfy the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Defendant also argues Plaintiff's allegations are not plausible under the reasonable consumer standard, citing *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013). Numerous courts, however, have rejected the analysis in *Pelayo*.[5]

Defendant also argues the safe harbor doctrine applies because the labels on Jif products comply with non-binding FDA guidance concerning labeling of bioengineered foods. Defendant is wrong. The "safe harbor rule applies only where 'the Legislature has permitted certain conduct or considered a situation and concluded no action should apply'; as such, the safe harbor rule applies only where there is a law that expressly authorizes the activity." *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010). Here, the non-binding guidance Defendant cites contains no federal requirements regarding the term "natural," and, moreover, it does not expressly authorize the use of "natural" on food containing bioengineered ingredients. *See Frito-Lay*, 2013 WL 4647512, at *7, *10, *22–23; *cf. Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339–42 (3d Cir. 2009). As a result, the safe harbor doctrine does not shield Defendant.

### CONCLUSION

For the reasons stated above, Plaintiff agrees that the Court should hold a conference. Plaintiff respectfully requests that the conference be used by the Court to determine whether a settlement conference with the Court should be required prior to the filing of any motions, including the motion to dismiss proposed by the Defendant.

Respectfully submitted,

Michael R. Reese

cc: All counsel of record

---

(E.D.N.Y. Aug. 29, 2013) ("[T]he primary jurisdiction doctrine does not apply when 'the issue at stake is legal in nature and lies within the traditional realm of judicial competence.'"); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2010) ("The question whether defendants have … marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine.").

[4] *See, e.g.*, *Frito-Lay*, 2013 WL 4647512, at *15–18; *Bohac v. Gen. Mills, Inc.*, No. 12-CV-05280-WHO, 2014 WL 1266848, at *4–9 (N.D. Cal. Mar. 26, 2014).

[5] *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013) (stating that *Pelayo*'s "conclusion is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit [Court of Appeals]").